Association, et al. v. Stephen McCraw, et al. You may proceed with argument. Thank you, and may it please the Court, my name is Ian Davis on behalf of Kelly Higgins in his official capacity as the District Attorney of Hays County, Texas. In my brief time, I will address the threshold justiciability issues before the Court. For two reasons, the plaintiffs have failed to establish jurisdiction over their claims against the Hays County D.A. First, they do not qualify for Ex Parte Young because they have failed to show, to carry their burden to show that the D.A. has demonstrated a willingness to enforce the challenge statute, Chapter 423. And second, the plaintiffs have failed to unlock the Article 3 door to the federal courthouse because they cannot trace their alleged injury to any action of the D.A. of Hays County. Now from the- In what order do we do this case? Do we do your argument first about whether or not any of your defendant is involved? Do we do the preemption argument? How would you say we should go through this case? Because there are jurisdictional issues before- Yes, but there are several jurisdictional issues, and so how would you propose we go? Your Honor, I propose that standing is the clearest way to address the jurisdiction and then Ex Parte Young, and Ms. Pettit, my colleague, will be addressing preemption in her time. Now from the outset, there are several undisputed facts that are important to highlight. The plaintiffs in this case openly admit they've never been prosecuted or threatened with prosecution by the D.A. of Hays County under this challenge drone statute. They also admit that they've never spoken to or interacted with anyone from the D.A.'s office in Hays County. Now these facts are dispositive. Under Ex Parte Young, this court has said that the plaintiff must show that the public official has demonstrated a willingness to enforce the challenged law. In City of Austin v. Paxton, this court said it's not enough that the public official have the general duty or authority to enforce the challenged law. And here, the plaintiffs, they can't point to any specific conduct that the D.A. of Hays County has done to demonstrate a willingness to enforce this law. Was the police that were involved in a warning in 2018? Yes, Your Honor. One of the members of the plaintiff NEPA, Billy Calzada, he recounts this interaction with Hays, pardon me, with San Marcos Police and federal ATF agents where he was flying a drone taking photographs. Now the federal ATF and San Marcos Police are not, they're not controlled by the Hays County D.A. And so the actions of those officers have nothing to do with the D.A. of Hays County. So your clients have never in fact enforced Chapter 423? So Your Honor, the record reflects that in 2017, the Hays County D.A. initiated a prosecution against a non-party for drone-related conduct. But for three reasons, that does not establish Ex Parte Young here, or the demonstrated willingness standard. First, the record doesn't show that that had anything to do with photojournalists or members of the press, like the plaintiffs. Second, the record doesn't show that that was brought under Chapter 423, just for drone-related conduct. And third, the plaintiffs— Brought under? The record, I can speak to it, Your Honor, but the record only reflects that it was for drone-related conduct. Was it stalking or something instead? It was one neighbor spying on, or taking photographs with a drone of his other neighbor, surreptitious photographs. And the third thing is that the plaintiffs found out about that 2017 prosecution after suit was filed. They found out about it in discovery. And so they can't say that their injury of chilled speech was caused by something they learned about after the complaint was filed. I'll briefly— Do you agree that you are responsible for enforcing Chapter 423? Yes, Your Honor. The DA of Hays County has the authority to prosecute under that challenged law. But City of Austin v. Paxton says that's not enough. As recently as the Osterwich opinion from last month, this court has said that there needs to be a demonstrated willingness to enforce the challenged law. And we do not have that on this record. Does this matter whether it's criminal or civil? Your friend makes a distinction. Your Honor, I don't think it does. Ex parte Young, the seminal case about which we're talking, involved a criminal matter. I see my time has run. Is there anybody that plaintiffs can sue at this point, if not you? Your Honor, the answer is I don't know. The proper defendant here is a public official in Texas who has enforced— taken some affirmative action to enforce the challenged provisions of Chapter 423 against photojournalists. And on this record, it's certainly not the DA of Hays County or the state defendants here. Thank you. The San Marcos police officer, yes, Your Honor, that very well could be a proper defendant in this case. But he or that office has not been sued. Thank you. It's too late to sue them. I haven't looked at the statute of limitations issue, but it may well be, Your Honor. Thank you. Thank you. Thank you, Judge Elrod, and may it please the court. I'm going to start off where my colleague just left, because we agree with him that the easiest way for the court to resolve this case is based on the plaintiff's repeated acknowledgement that they have not had any threats of enforcement by at least the state defendants as well as the Hays County attorney. Preemption, by contrast, in this context, Judge Elrod, is not a jurisdictional issue. And so we would go with either— With the standing or the ex parte young. Correct, Your Honor. And in this instance, ex parte young is likely the cleanest outcome, because this court does have a number of cases in the First Amendment context that say there is a presumption of enforcement for a non-aborabund law purely for the purposes of finding injury. The court does not presume, however, that that goes to any particular defendant. So as a result, their concessions, for example, at ROA 1002 and 1007, that these state defendants have not enforced the law against them or threatened enforcement— So there might be standing, because they can articulate an injury, but it's not against these defendants. Correct, Your Honor. It would be, for example, against the San Marcos Police Department that you were just discussing. And in response to your last question, I don't remember whether it was Your Honor or Judge Clement, the statute of limitations in 1983 is two years, so it's too late to sue the San Marcos defendants at this time. So turning to— What significance does the information provided by opposing counsel with respect to the preemption, what significance does that have? It actually demonstrates why their preemption claim is without merit. So nobody in this case disputes that there is a field of federal preemption at issue, and that is aircraft safety. I believe Your Honor, in the Witte case, already held that. So that's not the matter of dispute. The dispute is the scope of that preemption. And we know from Congress that aviation safety is not necessarily synonymous with unmanned aircraft safety because they've told us in 49 U.S.C. section 44-802A1, which is one of the provisions upon which plaintiffs rely, which actually distinguishes between unmanned aircraft and aviation. In context, aviation appears to refer to the same thing it did in the Federal Aviation Act of 1958, namely aircraft used in air commerce and air transport in the navigable airspace. That does not necessarily include unmanned aircraft. And turning to your specific question about the document that they filed last Friday, I would point Your Honor to page 6, which actually discloses that this question is far more nuanced than the plaintiffs have suggested. They have said—and I'm looking about seven lines down— where in discussing the scope of field preemption, it specifically states that tailored security-related restrictions over open-air water treatment facilities or certain types of critical infrastructure would likely be permissible. That is what we have here. And safety and security are more or less synonymous in this context. So simply invoking safety does not bring this case within the scope of preemption. I'd also point Your Honor down about further ten lines or so, where in discussing the scope of conflict preemption, this document also says that it would be okay for states to, for example, prohibit taking photographs or videos with respect to particular facilities. Listed among them are some of the very types of facilities that are at issue in Section 423.0035. So this document, if anything, reflects that this case does not have a valid preemption claim. For similar reasons, it doesn't have a valid First Amendment claim, either against Chapter 423.00 or, frankly, the FAA regulations at issue. Because both the FAA regulations and Chapter 423.00 are regulating conduct, namely drone usage, and even those provisions that regulate the taking of photographs are still conduct. And, for example, the Price case described it as a noncommunicative step in the creation of expressive activity, which is subject at most to O'Brien regulation. Could we go back to the ex parte young for just a minute? Do you agree that the correct test is a scintilla of enforcement? It is, but the question then is what is enforcement? And this Court has repeatedly held that enforcement involves compulsion or constraint. Because without that, the mere presence of authority doesn't create enforcement within the meaning of ex parte young. So the fact that the district courts just said, well, they're on the scene, so it's not relevant whether they actually issue citations or whatever. Is that for your defendants? The district court said that because these defendants had supervisory authority over peace officers, that is sufficient. That runs in the face of this Court's ruling in Haberkamp, which said that mere supervisory authority over somebody who might theoretically enforce a statute is not sufficient under ex parte young. Instead, there needs to be that same demonstrated willingness that my co-counsel was just describing. And here, there is no such demonstrated willingness, because in the words of the defendants themselves in documents that were put before the district court, they have had, and I quote, no occasion in which to enforce this law, an ROA 579. A lot of that comes because Texas has a very decentralized executive, so as a result, the type of state defendants here would not be the people who would typically be enforcing this type of law. That goes back to San Marcos. I'm just puzzled by the district court opinion, because it starts talking about the DPS not doing anything, but then it gets down to MAU, or however you pronounce the person's name, M-A-U. But it doesn't parse by defendant. It does not, Your Honor. Under the city of Austin, don't we have to parse by defendant? Yes, Your Honor. Absolutely, regardless of . . . Yes, Your Honor. That's one of the many errors of the district court opinion. Another one that I would point Your Honor to is on 1229 of the record, where the district court basically said the persuasive impact of this opinion would be sufficient to create, either for standing purposes. That runs in the face of this court's decision of Oak Pahloby, page 426, footnote 34, which says it has to be the actions of the defendant and not the coercive effect of the law, because an injunction runs against a defendant. It doesn't run against the law. And the defendants here haven't done anything that alleged to have violated the Constitution, so there's nothing for the court to enjoin. Did the journalists fall under the commercial purposes exception? Most likely, yes, Your Honor. The Supreme Court of Texas has not had cause to resolve this, but the commercial purposes, which is limited strictly to the no-fly provision, incorporates the standards from the Federal Aviation Administration, which counter-distinguishes commercial and what they call hobbyist or recreational. And because the journalists here are not doing this for recreational purposes, they would likely fall within the commercial exception. That does not get them, however, to where they want to go, because it does not resolve the issue that they can't take photographs under 423.003, and that's consistent with the FAA regulations that I just discussed. So even if that provision doesn't apply to them, they still can't do what they want. So as a result, they really don't have standing to allege any problems in terms of preemption with the no-fly provision. Ms. Pettit, how does the commercial exception work? Does it mean that you can go to people's private homes, you're going to sell their pictures to tabloids? Can you help on that? The commercial exception applies only to the no-fly provisions. It doesn't apply to surveillance. And the general answer to your question is that you might be able to fly your drone if you're not taking pictures. And going back to that FAA facts document that Judge Clement brought up, they give the example of commercial package delivery. But that does not mean that it gets you all the way to taking pictures, because Chapter 423.002 and 003 still prohibit that. And that is entirely consistent with the First Amendment, because the First Amendment would not allow these individuals to enter private property to take pictures without the consent. We see that from Brandsburg. Because while the publication of legally obtained information is protected by the First Amendment, that does not mean the same First Amendment protections apply to all pre-communicative acts, including torts like trespass. If anything, Your Honor, I think this statute is best seen as basically Texas liquidating what constitutes trespass with a drone. Because trespass typically involves implementing or entering into the property with your entire body, which is not what is happening with drones. But the penalties are very similar. So basically Texas has said that you cannot trespass using a drone any more than you can trespass using your body. If we were to reverse in this facial challenge on the merits, would that foreclose any future challenge to 423, any as-applied challenge to 423? So with the understanding that we think you should reverse on jurisdictional grounds, no, it would not. As-applied challenges, there might be an instance where it's unlawful. But here they have not pointed to any instance where it's been enforced against them at all, let alone that it's been enforced to prevent them from engaging in First Amendment-protected activity. Thank you. Was there another question? Otherwise, I'll see you in a few minutes. Thank you very much. Mr. Tai, is that correct? That's correct, Your Honor. May it please the Court? My name is Tim Tai. I'm here on behalf of the plaintiffs this morning. The district court correctly held that the challenge provisions of Chapter 423 violate the First Amendment. The record establishes that the threat of enforcement of Chapter 423 restricted journalists from using their drones to cover the news and forced some newspapers to stop publishing drone photography altogether. As a result, the public lost out. It lost out on photographic coverage of major events, including the aftermath of Hurricane Harvey, damage from other natural disasters, the immigration crisis. I do want to begin, though, by addressing the jurisdictional questions that Your Honors were asking about. With respect to the Hayes County DA, the record does, in fact, show that he brought a prosecution under Chapter 423. That's record at 993. In fact, in our brief on appeal, we cite the exact case of that prosecution for good measure. So Mr. Higgins is a proper defendant. His counsel has already admitted that he does have the authority to enforce this law. As to the state... But they say it was not brought under 493. I'm sorry, Your Honor. I thought they said it wasn't brought under the statute, that it was brought under a general idea that you wouldn't stalk your neighbor. That's incorrect, Your Honor. It was a Chapter 423 prosecution. Again, I would point Your Honor to record at page 993. And again, the case that we cited in the brief, that exact prosecution in Hayes County. As to the state defendants... Does it have to be any closer fit? I'm sorry, Your Honor? As to journalistic purposes. This was a, you know, stalk your neighbor versus journalism. They've never indicated they would go after journalists for news gathering. Should the court look to the... whether there's actually, in this context, any possibility? That's not the test for Ex parte Young. The test is whether there's a scintilla of enforcement. Right, enforcement of the statute for doing the thing that the person's doing. And there's no scintilla, is there, for doing this thing? Photography, and that's exactly what the statute restricts. That's what the prosecution was for. It was for photography with a drone. Photography for commercial purposes. So the statute itself allows for that. So I think that goes to the question of what commercial here means. I don't think there's anything in the statute that actually shows that photojournalists would fall under that commercial purpose exception, because it's not, in fact, clear from the statute what constitutes a commercial purpose. Because it's a regulation of photography, commercial photography is not understood to include photojournalism and news photography. There's uncontested testimony in the record to that meaning. On the other hand, if commercial means something like anything that's for profit, that might exempt newspapers that publish for profit, but it might not exempt non-profit news organizations. Okay, what about Stephen McCraw, the director of Texas Department of Public Safety? Is there any scintilla that... I know you said Mr... Is it Mao? Is that how you pronounce it? The D.A. of Hayes County, Mao. Mr. Mao, you said he did enforce under this statute. Did Mr. McCraw ever threaten enforcement under this statute, or is there anything in the record that says that? So, Your Honor, I point this court to the test under speech first, that I think my colleague referred to, and under that test, this court says that there is a credible threat of enforcement where you have a law that is not morbid and that facially restricts speech that the plaintiffs seek to engage in. That's not limited to the standing context. This court has never said that analysis is limited to the standing context. What about City of Austin v. Paxton? So I actually think that decision is consistent with my view, Your Honor. In City of Austin, this court says when it's been determined that an official can act and there's a significant possibility that he will act... There's no significant possibility, though. That's the problem. Respectfully, Your Honor, I have to disagree. Again, because there is a credible threat of enforcement, this is a law that restricts speech on its face, is not morbid, and the defendants have not disavowed their intent to enforce it, that is a credible threat. And if I could explain it... So do you have anything specific as to Mr. McCraw or Mr. Mathis, or do you just rely on the general idea that there's a statute and they are people who could enforce such a statute? So we have pointed out in our brief that they have enforced their laws against drone pilots, but if I could explain it a little bit differently... So what's the answer to my question? Do you have anything specific as to Mr. McCraw or Mr. Mathis? I'm not aware of them ever having arrested someone under... Or threatened to arrest. Again, I think there is a credible threat of enforcement based on... Okay, I know, but can you... You can make your alternative argument, but just answer my question first. Say, no, Your Honor, but that's not the test. I'm sorry, I just want to help you here. I appreciate that, Your Honor. No, I'm not aware of them threatening to arrest anyone under Chapter 423, but if I could explain it a little bit differently, when you have the injury here, which is the injury of self-censorship, of chilled speech, that injury has to be traceable to ongoing unconstitutional conduct. The ongoing unconstitutional conduct under Speech First is the threat, the credible threat of enforcement by defendants who, I think, admit they have the power to enforce the law, and so an injunction would necessarily remedy plaintiff's injury of self-censorship by preventing that enforcement. So there is ongoing unconstitutional conduct, the threat of enforcement, that's why we're in federal court to begin with. And so I don't see any way how this court could say that somehow that ongoing threat of enforcement, that ongoing unconstitutional conduct is sufficient for standing purposes, but it's somehow not sufficient all of a sudden under Ex parte Young. Again, that's... This speech-chilling injury that has already occurred... Do you want to talk about Okoloba, or have the correct pronunciation of that? This eludes me. Okolobi? Yes. I don't think Okolobi is inconsistent with this. Okolobi didn't involve a speech-chilling statute, and in any event, the Ex parte Young discussion in that case was plurality. I think this court's later decisions have clarified, again, that defendants have the power to enforce the statute by arrest, and under this court's decision in speech first in Barilla and others, there is that credible threat, that ongoing threat of enforcement is what caused the injury and what an injunction would redress. Assuming you get beyond Ex parte Young, would you like to address preemption and then the First Amendment directly? Absolutely not. You know, there's been some citation to the Reagan-Billboards case, but that was a case where the court said we had overexpansively interpreted the First Amendment. So, Your Honor, I can address the First Amendment first, based on that question. So, I think there's no question. I'd like to separate out the surveillance and the no-fly provisions. I think that would help this court understand the issues a little bit better. So, the surveillance provisions restrict speech on their face. They are targeted at capturing images. This court in Turner said that photography and videography are speech. So, the surveillance provisions restrict speech on their face, and they do so in a content-based manner. First, because in 423.003, they restrict photography of people or of private property. So, you have to look at the picture. Is it a picture of a person? That's content based on its face. Then, in 423.002, they contain all of these carve-outs for you can take photos for research purposes if you're a professor. You can take pictures for real estate marketing purposes if you're a real estate broker. And the Supreme Court said in Sorrell that marketing and research are content-based categories of speech. They didn't say anything contrary to that in the city of Austin. So, it's clear to us that the surveillance provisions are content-based regulations of speech on their face. And as the district court found, they fail strict scrutiny because they prohibit a wide swath of photography of all kinds of properties where there's simply no privacy interest to protect. Things that you could walk down the street and see this building. You could take a picture of the building from your phone. You could take a picture of the building from an adjacent building. There's simply no compelling privacy interest there that the surveillance provisions are tailored to address. And further, the state hasn't shown why existing privacy laws would be insufficient to address any privacy issues that might be compelling here. So, the surveillance provisions, again, to us, unquestionably fail strict scrutiny. Is there a First Amendment right to use a drone to film a Fifth Circuit judge at home with his or her family? Your Honor, I think, no, but I think a regulation against that would pass First Amendment scrutiny, but what we're arguing, to be clear, is not an affirmative First Amendment right to photograph anything and anyone with a drone at any time. All we're saying is that if the state is going to regulate photography, it has to apply, the court has to apply the ordinary First Amendment analysis. Is it content-based? Is it content-neutral? Here, the surveillance provisions and the no-fly provisions are content-based, so this court has to apply strict scrutiny. I'm not saying that the state couldn't have passed a more narrowly tailored regulation to protect privacy. That's not this law. Are you saying they could have passed a broader one? Because if they took out marketing and research and just banned it outright, then it's not content-based. So, I don't think that would solve the First Amendment problem, Your Honor. First of all, the litany of carve-outs shows that, I think it would be contrary to the legislative purpose to completely eradicate all those exceptions. And second, then, you would be restricting even more speech, and you'd have a problem under City of Ladue v. Gileo, which is that you can't foreclose this entire medium of speech. That also runs in the First Amendment problem. Into people's yards? I mean, back to this hypothetical, you said no, and you said it would be allowed, but why? No, so again, I think if there was a narrowly tailored law to protecting privacy where there are actual privacy interests, such as places that people can't see from a public street or from an adjacent building or whatnot, that very well could satisfy First Amendment scrutiny, again, depending on how it's written, but that's not this law. With respect to the no-fly provisions, they operate a little bit differently. The no-fly provisions, I agree with my colleague that they don't say anything about speech on their face, but what they do is that they have the practical and inevitable effect of restricting speech, given the importance of drones, the close connection between drones and photography and news-gathering activities, and there are multiple Supreme Court cases in which the Court has said, where you have a law that targets non-communicative conduct on its face, but nonetheless has the practical or inevitable effect of restricting speech, we still apply First Amendment scrutiny. For example, Sorrell, that was a law about selling data, selling a product, and the Court still found that it had the effect of restricting marketing speech there. In McCullen v. Coakley, that was a law about where you could stand on the sidewalk. And again, the Court said, well, people use the sidewalk to speak, and so we have to be able to apply First Amendment scrutiny, because we can't let the government just regulate speech under the guise of regulating conduct, and that's the case here. Is the claimed constitutional right that you're asserting just for the press, or is it broadly applicable to everybody? Does everybody have a right to violate Chapter 423? So, everyone has a right to speech under the First Amendment, and there's also protection for newsgathering, as this Court recognized in Turner, as well as in older cases like NRA Express News. That right isn't necessarily limited to the press. It's limited, I think it protects the activity of newsgathering, but of course the speech clause, I think, is sufficient here for this Court to resolve the case. Turner said the public had a First Amendment right to film the police doing public things in public places. Here, we're talking about an asserted constitutional right to film private individuals on private property doing private things, which seems a little disconnected from the facts of Turner. So, Your Honor, I would point this Court to what Turner said, which is that there is a broader First Amendment right to film, and that comes from the fact that you can't separate out the act of filming from the distribution of the film itself. So, again, I want to make clear, I'm not saying that there is an affirmative constitutional right to film anyone at any time, any place. What I'm saying is that if you're going to regulate the act of photography, the act of videography, that triggers First Amendment scrutiny, and if you're going to do so in a content-based manner, it has to satisfy strict scrutiny, and the provisions here don't do that. So, again, the State has a number of tools it can use to protect privacy, but it has to use those tools within the bounds of the First Amendment. What relief do you seek exactly? The District Court gave us the relief we asked for, which was an injunction against the enforcement of the statute and a declaratory judgment. But against the enforcement of the entire statute or against certain provisions of the statute that you believe raise constitutional problems? Against the surveillance and the no-fly provisions, Your Honor. So we didn't challenge some of the other... Right. So, it's not against the statute. It's against portions. Correct. With the letter that you filed on Friday, the supplemental authority, would that be dispositive of one of your issues today? I think it would, Your Honor. I think the agency's view that regulations of flight paths and flight altitudes are preempted underscores our argument here, and I think that the agency's view has certainly accorded some weight, given that the FAA is intimately familiar with aviation safety regulations and is really in the best position to understand how state laws would interact with those regulations. So, I think my colleague has already admitted that this Court in Witte found that the field of aviation safety is exclusively occupied by federal law, and the question is whether these, the no-fly regulations, you're just talking about no-fly here, not surveillance. I don't understand how this is... It seems like page 6 is laws aimed at objectives other than aviation safety that do not impair reasonable use of the airspace, such as harassment of individuals or groups, privacy, etc., trespass. This is most definitely trespass. I mean, that's what they're trying to get around. You don't have an aerial easement, so it's trespass. I want to be a little cautious there, Judge Elrod. I disagree with that a little bit. Texas courts, for example, have held that a helicopter flying 300 feet over a property was not a trespass. So I'm not sure there is a definite trespass issue here. What the FAA regulations are saying, though, is that there might be ways that the state can regulate lower-to-the-ground flight for other reasons than safety. Here, we have a safety regulation that regulates all drone flight all the way up to 400 feet, which is where the FAA says drones can't fly anymore. So it doesn't leave any room for drone operators above these facilities at all. It, in fact, impedes the ability for anyone to operate a drone around and over these facilities, and that implicates aviation safety. Not only do other drone operators have an interest in a uniform set of regulations on where they can fly, but manned aircraft pilots also have a strong interest in making sure that they know that where they're going to fly, drone pilots can move out of the way as they're required to under federal law, 14 CFR 107.37. What about limiting it to 200 feet or 150 feet or 100 feet? I think that would certainly be a closer question. Why don't we tailor it that above this it would be a problem, but not below this? Why are we enjoying the thing without tailoring it? Well, respectfully, Your Honor, I'm not sure that this Court could just rewrite the statute like that, but I do think... But if it only in certain, you say between maybe between 250 and 400 is the problem, obviously you shouldn't be hitting transmission lines, and there are real legitimate public safety concerns with drones interfering with our electric grid and that sort of thing, in addition to the privacy concerns. So I agree with Your Honor that there are safety concerns here, but that just underscores that the no-fly provisions are safety regulations and the FAA... No, but it says you can do on safe electric grid, and these are specific allowable reasons that you can, the state can regulate. So, again, I think the FAA is saying that, for example, security reasons, you might be able to do so as long as you're not completely restricting a drone overflight over that area, and that's what this regulation... Well, it's not just security, it's operational reasons. If you interfere with the transmission lines because you're flying your thing at 40 or 50 feet, and we have mostly above ground lines in Texas, for example, you're going to hit those lines with your silly drone, which we've had in my family, so I'm not expressing a prejudice against these, but you're going to hit them by accident or something, and so why isn't that legitimate to have a no-fly zone in certain places for these things, in the residential areas where we have the transmission facilities? So, Your Honor, I think, first of all, FAA regulations already address that. FAA regulations prohibit reckless operation of an aircraft. Well, it could be just accidental, negligent, not reckless. If I may finish, Your Honor. Certainly. So, again, the key here is not that the state can't protect its infrastructure, it's that if it's going to do so by regulating flight altitudes and flight paths, those are areas that have the effect and impact on aviation safety, and that is the exclusively— No, but the FAA itself, who you said we should defer to, says those are legitimate state enterprises. Again, Your Honor, I think the FAA also says, though, that regulations that would completely prohibit drone flight, wouldn't leave overflight, would be preempted. So, again, if the state were to have a much more narrowly tailored restriction, that might not be preempted, but here they've restricted all of the overflight, and that impedes, again, drone operators, for example, from being able to maneuver out of the way of manned aircraft. That implicates safety concerns. Unless the Court has any further questions, we rest in our briefs. Thank you. Thank you. A few quick points, Your Honor, starting with that last issue. The complete overflight ban that my young friend just pointed to ignores the commercial purpose exception, which is limited to the no-fly provision, or what they call the no-fly provision, which is precisely what the document they cited on Friday said we should have, that we should exempt commercial flight. We have done so. Turning back to the beginning of his argument, where he said that the speech-first analysis was not limited to standing, or at least he didn't know of any case that said that, Ostrowich said precisely that, that even though there was a, they were standing in that issue, in that case, to sue local entities that had actually enforced, because they had, because those entities had repeatedly cited the statute, they found that there was Ex parte Young, that Ex parte Young did not give a route around immunity for two statewide officers. Turning to what he claims is the ongoing threat, or ongoing unconstitutional activity, throughout he, in response to numerous questions from Judge Elrod, he just kept pointing to the fact that it is insufficient to establish standing under footnote 36 of Okolobe, and it is insufficient to establish a route around sovereign immunity, as the Supreme Court just said in Whole Women's Health against Jackson. Turning to the First Amendment questions then, as Judge Willett noted, Turner does not actually create an unmitigated right to record at any time for any purposes. The Ninth Circuit has recognized such a right, for example in a recent case entitled, I believe it was Project Veritas against Schmidt, but that is inconsistent with how pretty much every other circuit has addressed the issue, including Hills and Price in the letter that I submitted last week, where they expressly stated that the cases upon which my friend has relied are far narrower to public people doing public business in public places which have their own unique First Amendment concerns that do not exist in Judge Willett's hypothetical for even a public official in the privacy of their homes. And finally, the question about whether it is content based. The examples that he excited to about content based were all related to the identity of the speaker, but as the Supreme Court has repeatedly noted, speaker based restrictions are only First Amendment are only suspect under the First Amendment to the extent that they reflect a subtle way to make content restrictions, which Turner 1 established on page 643 are laws that confer benefits or impose burdens without reference to the views expressed are content neutral. That is precisely what we have here for what would happen as the court, sorry, as the court reaffirmed in City of Austin against Reagan, where you can look at the content of the document or the content of the picture in order to determine a content neutral location based restriction. This falls squarely within that case and it is consistent with the First Amendment. Unless your honors have any other questions? You may be the wrong appellant to ask this question to, but Mr. Tye in his presentation mentioned that the previous enforcement action was under chapter 423 specifically. So my understanding is that that was correct. It was not as to journalists. And so that particular instance might have as I mentioned in my opening presentation established a correct defendant in 2017 when it happened. However, it does not, for example, go to the type of conduct that we have at issue here as Judge Elrod pointed out because it's not against journalists. So in that particular instance, because they are alleging, it's a bit of an odd claim where it's a facial claim as to journalists, which is an as applied challenge that is as applied to journalists. Since there is no restriction or any type of enforcement towards journalists, it doesn't create a route around ex parte or standing for a claim by journalists for a journalist specific exception. That's been bothering me the entire time. It seems that it's not really a facial claim. And so I don't, so the questions that Judge Willett asked earlier about, well if we were to determine this, does it preclude all the future cases? This is really as applied to journalists. Yes, Your Honor, except to the extent that they are asserting that it's over broad. But to determine that it's over broad, you'd have to, in the words of Hansen, compare it to the complete scope of prescribed activity, which with respect to my opposing counsel, they sort of assume that Texas is like New York in the sense that you can see all property from an adjoining street. That's not true at all, as Your Honor is well aware. And so as a result, the full scope of this law involves neighbors spying on each other in Midland or on corporate espionage over property in West Texas. The scope is enormous. They are making an as-applied challenge to one little piece and they have not established an as-applied challenge here. Thank you. We have your argument. This case is submitted. We appreciate all the arguments in this case. And we note that Mr. Tai is a law student and we wish you well in your studies. Thank you.